**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOYCE GREEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CASE NO. 4:17-cv-458** |
| | § | |
| **WAL-MART STORES, INC. AND** | § | **(JURY TRIAL DEMANDED)** |
| **WAL-MART TRANSPORTATION, LLC** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**ORIGINAL COMPLAINT**

1.  Plaintiff Joyce Green ("Plaintiff" or "Green"), by and through her attorneys, brings this action for damages and other legal and equitable relief from the violation of the laws proscribing discrimination based on race, color, gender, retaliation, and exercising the right to take federally-protected leave, stating the following as Plaintiff's claims against Wal-Mart Stores, Inc., and Wal-Mart Transportation, LLC, (collectively "Walmart" or "Defendant") and their related subsidiaries, successors, and assigns.

**INTRODUCTION**

2.  This is an action brought by Plaintiff seeking damages from Defendant for acts of intentional discrimination based on race, color, and gender, as well as for acts of retaliation, because Plaintiff engaged in protected activity. Defendant's acts of discrimination and retaliation are in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.* ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"); and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code, § 21.051 *et seq.*, as amended.

**ORIGINAL COMPLAINT**

1

3.  Plaintiff also seeks damages from Defendant for interfering with her right to take federally-protected medical leave and for acts of retaliation because Defendant requested federally-protected medical leave.  Defendant's acts of interference and retaliation are in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*., as amended ("FMLA").

4.  Plaintiff demands a trial by jury.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C. § 2000e, *et seq*., as amended, 42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended; and 29 U.S.C. § 2601 *et seq*., as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.  Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), inasmuch as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial portion of the acts that make up the basis of the complaint occurred within this judicial district.

**ORIGINAL COMPLAINT**

## PARTIES

7.   Defendant Wal-Mart Stores, Inc. is a corporation incorporated in the state of Delaware, with its principal place of business located at 702 S.W. 8th St. Dept. 8687 #0555 Bentonville, AR 72716-0555. Upon information and belief, Defendant is an employer covered by the statutes referenced herein.  Wal-Mart Stores, Inc. may be served with process by serving its registered agent: CT Corporation System 1999 Bryan St. Suite 900 Dallas, TX 75201-3136.

8.   Defendant Wal-Mart Transportation, LLC is a limited liability company incorporated in the state of Delaware, with its principal place of business located at 702 S.W. 8th St. Dept. 8687 #0555 Bentonville, AR 72716-0555. Upon information and belief, Defendant is an employer covered by the statutes referenced herein.  Wal-Mart Transportation, LLC may be served with process by serving its registered agent: CT Corporation System 1999 Bryan St. Suite 900 Dallas, TX 75201-3136.

9.   Plaintiff Joyce Green is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of Harris County, Texas. Plaintiff Green worked for Walmart as a driver in its Sealy, Texas distribution center. She is and has been, at all relevant times, an "eligible employee" under 29 U.S.C. § 2611(2).

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

10. Plaintiff has herein alleged claims pursuant to Title VII and has timely filed complaints of discrimination with the EEOC and the Texas Workforce Commission.

11. Plaintiff has herein alleged claims pursuant to Title VII and has requested and received a Notice of Right to Sue letter prior to the filing of this Complaint.

**ORIGINAL COMPLAINT**

## STATEMENT OF FACTS

12. Plaintiff was employed by Defendant as a driver in its Sealy, Texas distribution center from approximately August 10, 2015, until Defendant terminated her employment on October 20, 2016.

13. In 2015, Plaintiff and her family were residing in California, where she was employed and leasing a home.

14.  In June of 2015, Green attended an all-day hiring event in Desoto, Texas.

15. There, Green interviewed for a driver position at Walmart.

16. During the interview process, Kay Murphy ("Murphy"), the HR Manager at Defendant's Sealy, Texas location, informed Green that Walmart drivers could reside anywhere in the United States, and that, consequently, it would be unnecessary for Green to reside in Texas in order to work as driver.

17. Murphy also informed Plaintiff that she would be allowed to transfer to a distribution center nearest her home in California after working as a driver in any distribution center for one year.

18. After she successfully completed the interview process, Defendant extended an offer of conditional employment to Plaintiff.

19. In July 2015, Green was contacted by representatives of the Walmart distribution center in Sealy, Texas and formally offered employment as a driver.

20. Green accepted the position and left her previous employer.

21. She based her decision on Defendant's promise that she could work temporarily in the Sealy, Texas distribution center and then transfer to a distribution center nearest her home in California after one year of service.

22.  On August 10, 2015, Green began work in Defendant's Sealy, Texas distribution center.

**ORIGINAL COMPLAINT**

23. At the time she was hired, Defendant employed approximately 150 drivers at the Sealy location, only three of whom (including Green) were women.

24. The two other female employees were White and had been employed at that location for over ten years.

25. Upon information and belief, Green was the first African-American female driver at the Sealy distribution center.

26.  Throughout her employment with Defendant, Plaintiff was called "the Black woman driver" by Defendant's employees.

27.  Green attended orientation from approximately August 10, 2015 until August 14, 2015.

28. Two White male drivers, Frank (LNU) and Randy (LNU), also attended the orientation.

29. On her first day of orientation, one of the White male drivers loudly said to a group of other White male drivers, "there goes that Nigger girl they just hired here in Sealy. Where there's one, more will follow."

30. Green complained about the incident to Defendant.

31. In response, Plaintiff's manager stated, "Some people are just like that.  Just ignore it, you have bigger things to focus on."

32. Upon information and belief no remedial measures were taken.

33. On her second day of orientation, Murphy told Plaintiff "Joyce, you know that you are the first Black woman to be hired here in Sealy, Texas for Walmart. This is big for you if you get what I mean. You'll be met with a lot of opposition and we here at Sealy are going to need you to rise above it."

**ORIGINAL COMPLAINT**

34. During orientation, the Sealy distribution center's General Manager, Paul Petersen ("Peterson") informed the drivers that Walmart had changed its policy with respect to driver residence and transferring back to their home states after a year of service.

35. More specifically, Peterson informed them that under the new policy, drivers were now required to live within 250 miles of their distribution centers and were no longer eligible to transfer to a distribution center in their home states after a year of service.

36. Consequently, drivers who were residents of another state would be required to reside in Texas in order to keep their positions.

37. Approximately one week later, however, Frank, the White male in Green's orientation class, was allowed to transfer to a Walmart distribution center in his home state of Florida.

38. Green was not offered the opportunity to transfer to a distribution center in her home state of California.

39. Instead, Green was forced to break her lease in California and to relocate herself and her family to Texas, thereby incurring significant financial losses.

40.  Walmart representatives later claimed that "special circumstances" applied in Frank's case.

41. During Plaintiff's orientation she was told the male drivers they would be assigned a trainer/mentor for road-training purposes.

42. These mentors were specially trained mentors/trainers.

43. Both Frank and Randy were assigned mentors.

44. Plaintiff was not assigned a mentor.

45. Plaintiff asked why she had not been assigned a mentor and whether it had to do with the fact that she was a Black woman.

**ORIGINAL COMPLAINT**

46. Plaintiff was told that the mentors were uncomfortable training a woman, that there were no female trainers at the facility, and that Walmart could not locate a trained mentor for her.

47. A male driver without mentorship training conducted Green's road-training instead, which lasted for approximately one week.

48. During this road training, Green was denied convenient access to food and clean bathroom facilities.

49.  During her employment with Defendant, Green was harassed by White/male employees for attempting to use Defendant's bathroom/shower facilities, treated disrespectfully by same, and subjected to filthy working conditions, including, but not limited to, having a White male driver leave a bottle of urine and a used condom in her truck for her to find.

50. Upon information and belief, White/male employees were not so treated.

51.  Green reported these incidents to management but no remedial action was taken.

52. During her employment with Defendant, Green was denied permission to drive to nearby truck stops in order to shower, eat and take her ten-hour break following long shifts lasting up to fourteen hours.

53. Upon information and belief, White/male employees were not so treated.

54. Green reported these incidents to management but no remedial action was taken.

55. During her employment with Defendant, Green was denied the assistance of White/male supervisors and coordinators when working on the road.

56. Upon information and belief, White/male employees were not so treated.

57. Green reported these incidents to management but no remedial action was taken.

58. During her employment with Defendant, Green was forced to drive an unsafe truck which was prone to mechanical failure.

**ORIGINAL COMPLAINT**

59. Green reported the problem but no action was taken until a White driver reported the problem.

60. Upon information and belief, other Black drivers were forced to drive this same unsafe vehicle and had also reported the problem to no avail.

61. During her employment with Defendant, White/male supervisors reprimanded Green for spurious reasons in an effort to get her fired, including, but not limited to, falsely accusing her of damaging equipment, failing to follow protocol, and making improper deliveries.

62. Upon information and belief, other Black drivers were falsely accused of damaging equipment as well.

63. Upon information and belief, White/male employees were not so treated.

64. Green reported these incidents to management but no remedial action was taken.

65. During her employment with Defendant, other White/male employees reported Green to management for spurious reasons in an effort to get her fired.

66. As a result of these false reports, Green was reprimanded.

67. Upon information and belief, White/male employees were not so treated.

68. Green reported these incidents to management but no remedial action was taken.

69. Upon information and belief, no White/male employees were disciplined for submitting false reports about Green's demeanor and work performance.

70. On or around October 11, 2016, the air lines on Green's truck detached while she was driving.

71. After assessing the damage, she brought the truck to a nearby repair shop, which repaired the air lines.

72. Green paid out of pocket to have the air lines repaired.

73. Green reported the incident by telephone and continued hauling loads with the truck.

**ORIGINAL COMPLAINT**

8

74. Upon returning to the Sealy distribution center, Green had the truck inspected by the Sealy distribution center's shop manager.

75. He informed Green that the truck was in working order and that the air lines had been installed properly.

76. On October 13, 2016, Green submitted a written statement describing the incident to White Safety Manager, Tom Nagy ("Nagy").

77. That same day, Green met with Nagy and Peterson, who discussed the October 11, 2016, incident with her.

78. During the meeting, Nagy and Peterson refused to believe Green's account of the incident and pressured her to change her statement.

79. Green refused to change her statement.

80. On October 13, 2016, Green was suspended pending an investigation into the October 11, 2016, incident.

81. During Green's employment with Defendant, she suffered significant mental anguish and stress as a direct result of Defendant's conduct, including, but not limited to, headaches, loss of appetite, loss of sleep, and nightmares.

82. On October 13, 2016, Green visited her physician for stress-related symptoms, and her physician recommended that she enroll in a counseling program.

83. Consequently, that same day, Green contacted the third-party entity that handles FMLA leave for Walmart, and requested FMLA leave.

84. However, on October 14, 2016, Green was informed that her Walmart insurance benefits had been canceled.

85. Green did not receive notice prior to the cancelation of her insurance benefits.

**ORIGINAL COMPLAINT**

86. Green subsequently discussed her request for FMLA leave and the cancelation of her insurance benefits with Murphy via telephone.

87. During that conversation, Murphy stated that Walmart had cancelled Green's insurance benefits by "mistake."

88. Green was not provided with the required eligibility and rights and responsibilities notices or any other paperwork related to her request for FMLA leave.

89. On October 20, 2016, Defendant terminated Plaintiff's employment, allegedly for "gross misconduct and integrity issues."

## CAUSES OF ACTION

**Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et. seq.*, as amended; Texas Commission on Human Rights Act, Texas Labor Code, § 21.051 *et seq.*.**

90. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

91. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in the practice of discrimination and retaliation against the Plaintiff named herein who has asserted such claims.

92. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of denying her transfers.

93. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of denying her training.

94. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of creating a harassing and hostile work environment.

**ORIGINAL COMPLAINT**

95. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of discriminatory discipline.

96. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of discriminatory termination.

97. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in discrimination against Plaintiff in the form of canceling her insurance benefits.

98. The conduct alleged herein violates Title VII and the TCHRA as Defendant has engaged in the practice of discrimination by retaliating against Plaintiff for engaging in protected activity as alleged in this section.

99. Plaintiff's requests for relief are set forth below.

## 42 U.S.C. § 1981

100. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

101. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination and retaliation against the Plaintiff named herein who has asserted such claims.

102. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff in the form of denying her transfers.

103. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff in the form of denying her training.

104. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff in the form of creating a harassing and hostile work environment.

105. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff in the form of discriminatory discipline.

**ORIGINAL COMPLAINT**

106. The conduct alleged herein violates Section 1981 as Defendant has engaged in discrimination against Plaintiff in the form of canceling her insurance benefits.

107. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff in the form of discriminatory termination.

108. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination by retaliating against Plaintiff for engaging in protected activity as alleged in this section.

109. Plaintiff's requests for relief are set forth below.

## Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*., as amended

110. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

111. The conduct alleged herein violates the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. because Plaintiff was an eligible employee under the FMLA; Defendant was subject to the requirements of the FMLA; Plaintiff was entitled to leave under the FMLA; Plaintiff gave notice to Defendant of her intention to take FMLA leave; and Defendant has interfered with Plaintiff's right to take FMLA leave.  29 U.S.C. § 2615(a)(1).

112. The conduct alleged herein also violates the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. because Defendant has engaged in the practice of retaliating against Plaintiff by subjecting her to adverse employment actions because she exercised rights protected by the FMLA.  29 U.S.C. § 2615(a)(2).

113. Plaintiff's requests for relief are set forth below.

**ORIGINAL COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

•       Preliminary and permanent injunctions against the Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

•       A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, as amended; and the Texas Commission on Human Rights Act, Texas Labor Code, § 21.051 *et seq.* as amended.

•       Granting an order restraining Defendant from any retaliation in any form against Plaintiff for participation in this litigation;

•       Plaintiff seeks injunctive relief, including but not limited to:

a.      Training on the subject of employment discrimination for all of Defendant's employees;

b.      Diversity training for all of Defendant's managers conducted by reputable outside vendors;

c.      Hiring of Human Resources representative for all locations, including off-site facilities;

d.      Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

e.      Active monitoring of the work areas to ensure compliance with discrimination policies;

f.      All promotional opportunities posted on all employee bulletin boards; and

g.      Monitoring by the Court or a Federal Agency to ensure that Defendant complies with all injunctive relief.

**ORIGINAL COMPLAINT**

13

- All damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation, and job benefits they would have received but for Defendant's discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

- Front pay to the Plaintiff until such time as she can be placed into the same position, title and grade they would now occupy but for Defendant's discriminatory practices;

- Liquidated, exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless and/or intentional conduct;

- Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

- Pre-judgment and post-judgment interest, as provided by law; and

- Granting Plaintiff other and further relief as this Court finds necessary and proper.


Respectfully submitted,


_____
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas  78731
(512) 539-2626 (phone)
(512) 539-2627 (fax)

**ORIGINAL COMPLAINT**

**ATTORNEYS FOR PLAINTIFF**

**ORIGINAL COMPLAINT**